UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LATABITHA BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-4461 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| DENIS R. MCDONOUGH, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Latabitha Bryant, an African-American, works as a nurse with the Department of Veterans Affairs. In 2020, she worked part-time, and she wanted more hours. She applied for a full-time position in April 2020, but she didn't get it. And then, a few months later, the VA reduced her hours. She wanted more time, but she got less.

In August 2020, Bryant complained to the agency's Equal Employment Opportunity office about getting passed over. She believed that she did not receive the full-time position in April 2020 because of her race. Later, Bryant filed a complaint with the EEOC, but the EEOC dismissed her claim as untimely.

Bryant ultimately sued the Secretary of the Department of Veterans Affairs, alleging race-based discrimination, harassment, and retaliation. She brings a claim about getting passed over in April 2020. And she adds a claim about getting passed over in October 2020, too. She also brings a claim about the reduction in hours.

The government responded by filing a motion for summary judgment. The government argues that any claim about the April 2020 hiring decision is untimely. A federal regulation

requires an aggrieved employee to raise a discrimination claim internally within 45 days. But here, Bryant did not complain to the Equal Employment Opportunity office until August 2020.

As the government sees it, Bryant failed to raise her claim in a timely manner. She complained about the April 2020 hiring decision in August 2020, months after the fact. The government also contends that Bryant did not exhaust her administrative remedies for the October 2020 incident, or for the reduction in hours. Bryant acted too late, and did too little.

For the reasons stated below, the motion for summary judgment is granted.

## Background

For more than a decade, Latabitha Bryant has worked as a licensed practical nurse at the VA. She began as a full-time nurse in 2012. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 1 (Dckt. No. 60).

Bryant transitioned to part-time status in 2015 to care for her family. *Id.* From July 2019 to July 2020, Bryant worked full-time hours, even though she was a part-time employee. *See* Def.'s Resp. to Pl.'s Statement of Facts, at ¶ 7 (Dckt. No. 66).[1] The point is that she worked extra hours as a part-time employee, but never officially returned to a full-time position. She was a part-time employee, working extra hours.

On February 11, 2020, Bryant's manager, Reena Varkey, sent an email to Bryant and other employees about an opening for a full-time nursing position. *Id.* at ¶ 10; *see also* 2/11/20 Varkey Email (Dckt. No. 62-6). Resumes were due by February 21.

---

[1] The government argued that Bryant did not support this fact with admissible evidence. *See* Def.'s Resp. to Pl.'s Statement of Facts, at ¶ 7 (Dckt. No. 66). But the record does include Bryant's timesheets from July 2019 to July 2020. *See* Timesheets (Dckt. No. 62-7); *see also* Timesheets (Dckt. No. 39-9) (attached to the complaint). The timesheets do show quite a few weeks when Bryant worked at least 40 hours, if not more.

2

Bryant met the deadline, applied for the position, and sat for an interview. She hoped to return to full-time work. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 2 (Dckt. No. 60).

She didn't get it. At some point near the end of April 2020, Varkey told Bryant that she was not selected for the full-time nursing job. *Id.* The parties do not pin down when, exactly, in April 2020 Bryant learned that she wasn't getting the full-time position (meaning what day). But the parties agree that Bryant learned about the rejection in April 2020.[2] *Id.*

Upset with the denial, Bryant spoke with a couple of individuals at the VA. In late May 2020, Bryant met with Varkey to discuss her concerns. *See* 5/28/20 & 5/29/20 Emails (Dckt. No. 62-8). Bryant complained that the VA had passed her over five times for a full-time position since July 2019. *Id.*

Varkey sent an email summarizing the meeting, and one of the bullet points summarized the discussion about Bryant getting passed over for the most recent full-time position. "Tabitha [Bryant] had concerns about why she was not hired for the one position she has applied [for] internally. Explained her the reason and advised her to go through the FOYA [sic] process to find out if she wanted the details of the interview held in 2020." *See* 5/28/20 Varkey Email (Dckt. No. 62-8, at 4 of 4).

The emails suggest that they also discussed Bryant's hours going forward. Varkey summarized the conversation in her email: "La Tabitha wanted to work four 12 hour shifts, i.e.,

---

[2] The third amended complaint (which isn't evidence) alleges that Bryant learned that she didn't get the full-time slot "[s]ome time at the end of April." *See* Third Am. Cplt., at ¶ 35 (Dckt. No. 39). In her statement of facts (which the government denied as unsupported), Bryant contended that she learned about her non-selection "[o]n or about the end of April 2020." *See* Def.'s Resp. to Pl.'s Statement of Facts, at ¶ 11 (Dckt. No. 66). An attachment to the complaint, an initial contact and interview sheet from the VA, says that Bryant learned that she was passed over on April 21, 2020. *See* VA Initial Contact and Interview Sheet (Dckt. No. 39, at 103 of 131). Similarly, the EEOC Appeal Decision says that Bryant learned about the decision on April 21, 2020. *See* EEOC Appeal Decision (Dckt. No. 47-5). The Rule 56.1 statements do not pin down the day in April 2020, but it does not matter when, exactly, Bryant learned about the decision in April 2020. On this set of facts, the month matters, but the day does not.

3

48 hours/pay period. It was agreed today that she can work four 12 hour shifts, but anything after 80 hours is considered unscheduled xtra hours in VATAS and accustaff." *Id.* The email confirmed that the VA would not reduce her hours before the Fourth of July: "The schedule has already posted till 7/4, changes will not be done (no hours will be deducted) on the posted schedule." *Id.*

In response, Bryant sent an email and addressed her hours: "I was also told that because I do not have a copy of my agreement to do 48 hours (4) 12 hrs shifts per pay periods, I will have to remain part-time 40 hrs with no weekend requirements." *See* 5/28/20 Bryant Email (Dckt. No. 62-8).

According to Bryant, she learned the next day (May 29) that the VA was cutting back her hours. "On May 29, 2020, the day after Varkey and the Plaintiffs [sic] met, Varkey informed Plaintiff via email that as of pay period 13, July 5, 2020, Plaintiff's hours will be cut back to 40 hours, and any extra hours will need to be approved." *See* Def.'s Resp. to Pl.'s Statement of Facts, at ¶ 13 (Dckt. No. 66).[3]

A few weeks later, on June 19, 2020, Bryant emailed the EEO manager, Jon Bisard, about the situation. *See* 6/19/20 Bryant Email (Dckt. No. 47-3, at 2 of 2).[4] She recounted her experience working full-time and part-time. *Id.* And she relayed that she was passed over for the full-time position in April 2020. *Id.*

Bryant did not claim racial discrimination, at least not explicitly. But she did say that it was "odd" that she had to apply for the position, given that she was already working full-time on

---

[3] As support, Bryant cited an email from Varkey dated May 29, 2020. *See* 5/29/20 Varkey Email (Dckt. No. 39-10). This Court does not necessarily read that email to announce a reduction in hours. Even so, for purposes of the motion, the Court takes it as a given that Bryant learned on May 29, 2020 that the VA was cutting her hours.
[4] Bryant attached the emails to her third amended complaint. They're in the summary judgment record, too. *See* 7/22/20 Bisard Email (Dckt. No. 47-3).

4

an interim basis. *Id.* And she expressed disappointment at not getting the full-time position. *Id.* ("I was disappointed but was told not to worry because I can remain working full-time hrs. Still upset and concerned but I didn't know what to do.").

Bryant then complained about the fact that she learned, in May 2020, that her hours were getting cut back. "Last month the manager then replaced the temporary position with a new temp and now I'm being told my hours are being cut from 72-80 a pay period to 48 a pay period." *Id.*

Bryant ended her email by expressing disappointment with the treatment that she had received, given her longstanding work at the VA. "I think its [sic] extremely disheartening to tell me the only way I can recieve [sic] full-time is if I leave the unit. I feel used, taken advantage of and undervalued." *Id.*

Bisard responded the next business day. *See* 6/22/20 Bisard Email (Dckt. No. 47-3, at 1–2 of 2). He first addressed the reduction in her hours. "[A]fter speaking with HR (I did not disclose your name) they notified me that as unfair as it may seem to you management has the right to cut your hours back to part-time status and has no obligation to continue the hours you were previously working." *Id.*

Bisard then addressed the possibility of pursuing a discrimination complaint. "If it is your desire to pursue a complaint through the discrimination complaint process you will need to reach out to the Office of Resolution Management (ORM). They are the only entity in the VA where a discrimination complaint can be filed." *Id.* He attached the ORM Complaint Process flyer. *Id.*

And then, Bisard told Bryant about the 45-day deadline. "Most important: You have 45-calendar days from what you feel was the last discriminatory event/action to file." *Id.*

Despite that warning, Bryant did not immediately contact the ORM about filing a complaint. Weeks passed, but Bryant did not press the issue.

On August 11, 2020, Bryant reached out and asked Bisard if she still had time to pursue a discrimination claim. "After careful consideration and if I am still within the allotted timeframe, I will like to know if it is possible to move forward with a formal discrimination complaint against my current nursing manager." *See* 8/11/20 Bryant Email (Dckt. No. 62-9).

Bisard didn't offer an opinion about whether a claim would still be timely. Instead, he reiterated what he had said before. Bryant needed to complain to the Office of Resolution Management, and any complaint needed to arrive within 45 days of the last discriminatory event or action. *See* 8/11/20 Bisard Email (Dckt. No. 62-9).

Later that day, on August 11, 2020, Bryant submitted a discrimination claim to the Office of Resolution Management. *See* Initial Contact and Interview Sheet (Dckt. No. 47-4); Counselor Report (Dckt. No. 39-13); Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 3 (Dckt. No. 60) ("Plaintiff contacted EEO-ORM in August 2020."). She complained that Varkey had denied her a full-time position in April 2020 because of her race. *Id.*

The interview sheet confirms that Bryant complained about the hiring decision in April 2020. "The AP [Aggrieved Party] interviewed for the position but was not selected. The candidate who was selected was the individual who held the temporary LPN position. [The person] hired is a white female. The [Aggrieved Party] stated that she has worked in the department for 10 years and she does not understand why she was not selected for the position. The [Aggrieved Party] stated that the RMO [Varkey] and the candidate who was selected are both White. The [Aggrieved Party] believes that she was discriminated against based on her

6

race." *See* Initial Contact and Interview Sheet (Dckt. No. 47-4). There was no mention of the reduction in hours in July 2020.

The Office of Resolution Management sent Bryant a letter confirming that she had complained about discrimination on August 11, 2020. *See* 8/11/20 Letter (Dckt. No. 39, at 107 of 131). The office described the claim as "Promotion/Non-Selection." *Id.*

Another hiring decision may have happened in October 2020, but it is not supported by the record evidence. In the third amended complaint, Bryant alleges that she was passed over for another full-time position in October 2020. *See* Third Am. Cplt., at ¶ 66 (Dckt. No. 39). Bryant's statement of facts says the same thing, but it is not supported by admissible evidence. As the government pointed out, Bryant cited timesheets, which don't reveal whether she was turned down for a job. *See* Def.'s Resp. to Pl.'s Statement of Facts, at ¶ 27 (Dckt. No. 66).

In any event, even if Bryant did get passed over in October 2020, she did not bring it to a head. Bryant did not complain to the EEO counselor about that issue.

In November 2020, Bryant filed a complaint with the EEOC, alleging racial discrimination. *See* EEOC Cplt. (Dckt. No. 39-21). She complained about the fact that she did not get the full-time position in April 2020. *Id.* ("I was called in the office and was told I did not get the position, because a better qualified person got the position."). She also complained about the reduction in her hours in July 2020. *Id.* ("Finally in July 2020, Mrs. Varkey dropped by [sic] hours back down to 40-48 hours, because she did not need me."). She did not mention anything about a hiring decision in October 2020.

The EEOC dismissed the complaint as untimely, and denied Bryant's appeal. *See* EEOC Appeal Decision (Dckt. No. 47-5).

Among other things, the EEOC concluded that Bryant had failed to raise in a timely manner a claim of race discrimination about the April 2020 denial of the full-time position. "[W]e find that reasonable suspicion of discrimination existed for the events in Claim 2 by April 21, 2020, and no later than May 28, 2020 [*i.e.*, when Bryant exchanged emails with Varkey], which is beyond the 45 day limitation period." *Id.* at 4.

That is, both April 21 and May 28 were more than 45 days before August 11, when she complained to the EEO counselor. So a complaint on August 11 was too late.

As the EEOC saw it, Bryant knew everything that she needed to know to raise a reasonable suspicion of discrimination on April 21, 2020. That's when Bryant met with her manager and learned that she didn't get the full-time position. "Knowledge of the selectee's race and favorable treatment is sufficient to establish reasonable suspicion." *Id.*

At that point, Bryant filed a *pro se* complaint in federal court. *See* Cplt. (Dckt. No. 1). A few amended complaints followed. The third amended complaint includes 27 exhibits. *See* Third Am. Cplt. (Dckt. No. 39).

The third amended complaint includes three claims. Count I is a claim of race-based discrimination about getting passed over for a full-time position in April 2020 and October 2020. *Id.* at 19 of 131. Count II is a claim for harassment/hostile work environment based on the same denials for a full-time position. *Id.* at 20. Count III raises a retaliation claim, alleging that Varkey reduced Bryant's hours and turned other employees against her because Bryant complained of unfair recruitment practices. *Id.*

The government, in turn, moved for summary judgment. *See* Def.'s Mtn. for Summ. J. (Dckt. No. 47). As the government sees it, Bryant failed to raise an issue with the April 2020

denial in a timely manner. The government also argues that she failed to exhaust her administrative remedies for the October 2020 denial and for the alleged retaliation.

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

A federal employee must take advantage of opportunities to resolve discrimination claims internally before running to the federal courthouse. *See Green v. Brennan*, 578 U.S. 547, 553

(2016); *Perkins ex rel. Estate of Perkins v. Brennan*, 821 F. App'x 630, 632 (7th Cir. 2020); *Formella v. Brennan*, 817 F.3d 503, 510 (7th Cir. 2016).

To start the process, the employee must contact an EEO counselor within 45 days of the alleged discrimination. *See* 29 C.F.R. § 1614.105. Federal employees "who believe they have been discriminated against on the basis of race . . . must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* This requirement ensures that the government gets the first stab at addressing any issues. *See Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) ("This 'counseling requirement' serves an important function; it gives agencies an opportunity to resolve an employee's complaint informally by conducting their own internal investigations.").

The requirement to contact the EEO office is not optional. The text of the regulation uses the verb "must," not "can" or "should." An aggrieved employee "must" consult a counselor within the agency before pressing forward with a claim. *See* 29 C.F.R. § 1614.105.

That requirement functions like a statute of limitations. *Id.* A court will "bar claims if the forty-five day requirement is not satisfied and there is no occasion for equitable tolling." *See Lapka*, 517 F.3d at 981 (citing *Rennie v. Garrett*, 896 F.2d 1057, 1061–62 (7th Cir. 1990)); *see also Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995) ("This deadline is construed as a statute of limitations and not as a jurisdictional prerequisite."); *O'Reilly v. Mayorkas*, 2021 WL 4034073, at *3 (N.D. Ill. 2021) (applying the 45-day requirement as a statute of limitations); *Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 700 (N.D. Ill. 2020) (same); *Jones v. Brennan*, 2018 WL 3770069, at *3 (N.D. Ill. 2018) (same); *Marciniak v. Brennan*, 2017 WL 8200181, at *2 (N.D. Ill. 2017) ("While the rule is not jurisdictional, claims will be 'barred if the forty-five day

requirement is not satisfied and there is no occasion for equitable tolling.'") (citing *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006)).

Here, the untimeliness of Bryant's claim about the April 2020 full-time position is straightforward. Bryant learned in April 2020 that she was not getting the full-time position. At that point, she had everything that she needed to know to pursue a discrimination claim. She knew that she didn't get the promotion, and she knew the race of the winning candidate.

The denial of the position started the clock. To bring a discrimination claim about the lack of the promotion, Bryant needed to complain to an EEO counselor within 45 days. *See* 29 C.F.R. § 1614.105. But Bryant did not complain about discrimination until August 2020. August 2020 is more than 45 days after April 2020. So Bryant was too late.

Bryant was too late even if the starting point was May 28, when she met with Varkey about the decision. May 28 is more than 45 days before August 11, when Bryant first complained to the counselor.

Bryant did not satisfy the deadline by reaching out to Jon Bisard, an EEO manager, on June 19, 2020. *See* 6/19/20 Bryant Email (Dckt. No. 47-3). June 19 is more than 45 days after the end of April. It was late on arrival.

Bryant's email also did not allege racial discrimination. In fact, Bisard – not Bryant – is the one who flagged a possible discrimination claim. And even then, he did not identify the *type* of discrimination. He simply floated the possibility, and told Bryant how to press the issue if she wanted to do it. *See* 6/22/20 Bisard Email (Dckt. No. 47-3).

The email to Bisard also did not satisfy the VA's protocols, because aggrieved employees had to file complaint with the Office of Resolution Management (ORM). *Id.* ("They are the only entity in the VA where a discrimination complaint can be filed.").

11

Even Bryant did not believe that she had raised a discrimination claim at that point. Months later, Bryant reached out again and asked if it was still "possible to move forward with a formal discrimination complaint against my current nursing manager." *See* 8/11/20 Bryant Email (Dckt. No. 62-9).

Bryant points to the fact that the VA reduced her hours in July 2020. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 5 (Dckt. No. 60). But the reduction in hours is a separate issue. The failure to hire Bryant for a full-time position (in April 2020) is different than reducing her hours as a part-time employee (in July 2020).

Getting passed over for the full-time position is not the same thing as getting fewer hours for her current position. And in any event, Bryant did not complain to the EEO counselor about the reduction in her hours in July 2020, so she can't bring a claim about that issue.

If Bryant had complained about the July reduction of hours in her August complaint to the EEO counselor, that claim would have been timely. But she didn't. Bryant didn't mention anything about the July 2020 reduction of hours when she complained to the Office of Resolution Management on August 11, 2020. *See* Initial Contact and Interview Sheet (Dckt. No. 47-4). Instead, her complaint was about the decision about the full-time position in April 2020.

Sometimes equitable estoppel can save an untimely claim. A plaintiff may "'raise equitable arguments, such as tolling, waiver, and estoppel, that might excuse [her] failure to comply with the time limitation.'" *Mayfield v. Lipnic*, 2018 WL 4853893, at *3 (N.D. Ill. 2018) (alteration in original) (quoting *Everage v. Runyon*, 1993 WL 272503, at *3 (7th Cir. 1993)).

For equitable estoppel to apply, a plaintiff must show that "(1) the party to be estopped knows the facts; (2) that party intended for [its] conduct to be acted upon or acted in such a manner that the party asserting estoppel had a right to believe [it] intended as such; (3) the party

12

asserting estoppel was ignorant of the facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to h[er] substantial injury." *Matamoros v. Grams*, 706 F.3d 783, 793 (7th Cir. 2013).

Importantly, "equitable estoppel applies only if the employer took 'active steps' to prevent the plaintiff from filing a discrimination charge on time." *Jackson v. Potter*, 240 F. App'x 136, 139 (7th Cir. 2007). And even then, the plaintiff must also show "that she actually and reasonably relied on the employer's conduct or misrepresentations." *Id.*

Equitable estoppel often comes into play when an agency gives misinformation to the employee. A good example would be telling the employee, say, that they have 90 days to raise a complaint (instead of 45 days), or telling the employee to go to the wrong office to complain.

Misdirection is inequitable, and provides a basis for equitable estoppel. *See Rodriguez v. Napolitano*, 2014 WL 1276193, at *8 (N.D. Ill. 2014); *see also Mayfield*, 2018 WL 4853893, at *4 (finding the plaintiff failed to support an argument for tolling or equitable estoppel because she did "not allege or establish that the EEOC misrepresented anything"); *Johnson v. Napolitano*, 2013 WL 1337174, at *3 (N.D. Ill. 2013) ("Johnson has not alleged that DHS actively misled her in anyway and as such, the government is not estopped from presenting its failure to exhaust defense.").

Equitable estoppel cannot save the day in the case at hand. Bryant points to the fact that she reached out to Bisard on June 19, 2020, and he responded on June 22, 2020. That's when he warned her about the time limit. "If it is your desire to pursue a complaint through the discrimination complaint process you will need to reach out to the Office of Resolution Management (ORM). They are the only entity in the VA where a discrimination complaint can be filed." *See* 6/22/20 Bisard Email (Dckt. No. 47-3).

Bisard did not misrepresent anything. He told her the correct deadline, and the correct office to contact. If anything, Bisard took the extra step of telling her about the 45-day deadline to raise a discrimination claim, even though she had not mentioned the possibility of discrimination. Applying equitable estoppel on these facts would let no good deed go unpunished.

What's more, Bisard's email did not prevent Bryant from bringing a timely claim. He emailed her on June 22, 2020. *Id.* The exact date when Bryant learned about getting passed over is not entirely clear. But the parties agree that it took place in April 2020. And June 22, 2020 is more than 45 days after April 30, the last day in April. Any claim about the April 2020 decision was already untimely.

In sum, any claims about the hiring decision in April 2020 are untimely. Bryant needed to raise any discrimination claim within 45 days, but she did not file a complaint to the counselor until August 11, 2020. She was months too late. Any claims about the reduction in hours in July 2020, or about the failure to get the full-time position in October 2020, are time-barred, too. Bryant did not raise those issues with the counselor at all, let alone within 45 days.

That's enough to resolve Counts I and II, which involve the hiring decisions in April 2020 and October 2020. The last remaining claim is Count III, a retaliation claim about the reduction in hours. Bryant alleges that the VA reduced her hours in July 2020 in retaliation for complaining about discrimination.

According to Bryant's statement of facts, the reduction in hours was a "direct retaliation for addressing concerns that Varkey was discriminating against the Plaintiff because she was African American." *See* Def.'s Resp. to Pl.'s Statement of Facts, at ¶ 13 (Dckt. No. 66).

14

But once again, Bryant failed to comply with the dispute-resolution process. Bryant never complained to the EEO office that the VA had reduced her hours in retaliation for bringing a retaliation claim. *See* Initial Contact and Interview Sheet (Dckt. No. 47-4). She didn't raise a retaliation claim internally, so she can't raise a retaliation claim for the first time now.

And in any event, her chronology does not line up. As Bryant tells it, the VA let her know about the reduction in hours in May 2020, and the reduction in hours took place in July 2020. *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶ 5 (Dckt. No. 60) ("Plaintiff was informed on May 29th, 2020 her hours would be reduced in July.").

But Bryant did not complain about discrimination until August 2020. The reduction in hours came before, not after, the complaint about discrimination. So the VA did not retaliate against her for complaining about discrimination. The reduction in hours came first, and the complaint about discrimination came second.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.

Date: April 25, 2023

Steven C. Seeger
United States District Judge